NOT DESIGNATED FOR PUBLICATION

No. 117,790

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LAURENCE M. JARVIS, an Individual Pro Se, and
BOSSAW LAND HOLDING AND MGMT. CO., LLC, by and
Through Its Managing Member, LAURENCE M. JARVIS, Pro Se,
*Appellant*,

v.

RONALD P. WOOD, et al.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; CONSTANCE M. ALVEY, judge. Opinion filed November 9, 2018. Affirmed in part, reversed in part, and remanded with directions.

*Laurence M. Jarvis*, appellant pro se.

*Stephen Phillips*, assistant attorney general, for appellee Amy L. Harth.

*Eldon J. Shields*, of Gates Shields Ferguson Swall Hammond, P.A., of Overland Park, for appellees Iva Schlatter and Charles Schlatter.

*Samuel A. Green* and *J. Steven Pigg*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, for appellee/cross-appellant Ronald P. Wood.

Before STANDRIDGE, P.J., MALONE, J., and STUTZMAN, S.J.

PER CURIAM: Laurence M. Jarvis appeals the district court's dismissal of his claims against the ex-wife (Iva Schlatter) and son (Charles Schlatter) of Jarvis' friend and former legal client, Ralph Schlatter; his claims against Ronald Wood, the conservator

1

appointed for Ralph in a separate probate proceeding; and his claims against Amy L. Harth, the district judge who presided over the probate proceedings. Jarvis argues that the district court erred by (1) not treating the defendants' motions to dismiss as motions for summary judgment and enforcing Supreme Court Rule 141 (2018 Kan. S. Ct. R. 205); (2) granting the motions to dismiss when, if matters outside the pleadings had been excluded, the motions did not warrant dismissal; (3) considering the motions at all when the defendants did not pay the statutorily required filing fees in full when they filed their motions; and (4) imposing sanctions against Jarvis for bringing baseless claims. Wood cross-appeals, arguing that the district court erred by dismissing some claims against him without prejudice, when all the claims against him should have been dismissed with prejudice.

FACTUAL AND PROCEDURAL BACKGROUND

The present appeal stems from a complex history involving Jarvis; his longtime friend and former client, Ralph Schlatter; Ralph's ex-wife, Iva B. Schlatter; and their son, Charles W. Schlatter. Jarvis, an attorney licensed to practice law in Kansas until his indefinite suspension in 2015, represented Ralph and his insurance agency for over 40 years and, thus, has a long history with Ralph, Iva, and Charles. See *In re Jarvis*, 301 Kan. 881, 885-90, 349 P.3d 445 (2015).

On May 17, 2013, Iva and Charles filed in Miami County District Court a verified petition seeking an order finding Ralph to be an impaired adult in need of a guardian and conservator. This lawsuit is hereinafter referred to as the probate proceeding. The same day, Miami County District Court Judge Amy L. Harth reviewed the petition and issued preliminary orders, appointing Ronald P. Wood as temporary guardian and conservator and scheduling a trial on the petition.

2

Ralph owned several pieces of real estate, some of which he rented to various tenants. The real estate involved in this case was located at 5420 State Avenue, Kansas City, Kansas, and is hereinafter referred to as the State Avenue property. In a letter dated May 23, 2013, Wood provided tenants of the State Avenue property with the preliminary orders from the probate proceeding, and Wood instructed the tenants thereafter to send all rent checks to him instead of to Ralph.

On June 18, 2013, Harth held a hearing in the probate proceeding at which Jarvis appeared as Ralph's counsel. Harth denied Ralph's motion to terminate Wood's appointment as temporary guardian and conservator. She also ordered that Wood continue his appointment until the court could determine whether Ralph was an impaired adult in need of a guardian and/or a conservator. Although the journal entry reflecting the June 18, 2013 hearing shows that Ralph "appeared in person and by counsel, Laurence M. Jarvis," it also lists Michael Jilka as "attorney for proposed ward and conservatee."

On July 18, 2013, without Wood's authorization, Jarvis, Ralph, Ralph's sisters, and Ralph's daughter purported to create Bossaw Land Holding and Mgmt. Co., LLC (hereinafter referred to as Bossaw), in order "to protect [Ralph's] assets from Ron Wood, [Iva], and [Charles]." Jarvis signed the articles of organization for Bossaw and filed them with the secretary of state. The same day, Ralph executed a document that purportedly deeded the State Avenue property to Bossaw.

On July 26, 2013, as counsel for Bossaw and Ralph, and again without authorization from Wood, Jarvis filed a limited action suit in Wyandotte County District Court ("the limited action suit"), seeking back rent from and the eviction of the tenants of the State Avenue property, who had been paying rent to Wood, Charles, and/or Iva instead of Ralph. The limited action suit also alleged a civil conspiracy between Charles, Iva, and certain tenants, and it asserted a claim of tortious interference with the contract and business relationship by Iva and Charles with respect to the rental income.

3

On August 27, 2013, after a prior hearing, Harth issued a journal entry on Charles and Iva's motion to disqualify Jarvis as Ralph's attorney in the probate proceeding. She found that Jarvis' pecuniary interest in the probate proceeding rendered his representation of Ralph a violation of "the spirit of Kansas Rule of Professional Conduct 1.8." Accordingly, she ordered Jarvis "disqualified from further representation of [Ralph] in this matter," and she noted that she would appoint counsel to represent Ralph.

On September 13, 2013, Harth held a hearing in the probate proceeding on Iva's and Charles' motion to hold these individuals and entities in contempt: Jarvis; Ralph's sister, Shirley Wilkin; Ralph's friend, Greg Scholz; Ralph's Kansas corporation, Schlatters, Inc.; and Bossaw. That motion is not in included in the record on appeal. Yet as reflected in the journal entry on the hearing, which *is* included in the record on appeal, Harth dismissed the motion for lack of personal jurisdiction over the individuals and entities Iva and Charles sought to have held in contempt. Also as reflected in the journal entry, Harth—in accordance with the stipulation of Iva, Charles, and Ralph's counsel of record, Jilka—held that the deed of record purporting to transfer the State Avenue property to Bossaw was "void, because [it was] signed, acknowledged[,] and recorded, without the approval of [the probate court] or [Wood] as the temporary guardian and conservator of Ralph Schlatter, and because Ralph Schlatter had no authority . . . to execute" the deed. Moreover, in accordance with the stipulation of Iva, Charles, and Jilka, Harth further held that Wood, as conservator, had "the sole authority to file lawsuits on behalf of Ralph . . . and that [Wood] is empowered to dismiss any lawsuits filed without [his] authority." Harth ordered Ralph, with help from Jilka and Wood, to dismiss the limited action suit "because said lawsuit was filed without the consent of the Court or of the Conservator."

On December 2, 2013, Harth held a hearing in the probate proceeding on the petition for involuntary guardianship and conservatorship. According to a complaint Jarvis later filed with the Kansas Commission on Judicial Qualifications, Jarvis appeared

4

at that hearing in an attempt to represent himself and the five other individuals and entities against whom the previous motion for contempt was brought. Jarvis wished to argue in favor of two pleadings he had filed in the probate proceeding on his and his clients' behalf: "'Defenses of Accused Contemnors to Mr. Wood's Motion for Relief'" and "'Motion of Accused Contemnors to set aside the May 27, 2013 Ex Parte Appointment of Ron Wood as a Temporary Guardian and Conservator pursuant K.S.A. 60-260(b)(1); (3) and (4).'" Apparently, Harth would not allow Jarvis to present his arguments, but the record on appeal contains no transcript of that hearing. Ultimately, Harth found that Ralph was an adult with an impairment who is in need of a guardian, she appointed coguardians and a standby guardian, she granted a motion filed on Ralph's behalf to continue the temporary conservatorship for 90 days, and she set a trial date to resolve the petition to establish a conservatorship. On December 6, 2013, Harth issued renewed letters of conservatorship to Wood.

On January 2, 2014, Wood moved to dismiss the limited action suit because he was Ralph's conservator and the case had been brought without his authorization. That case was terminated on January 14, 2014.

On January 9, 2014, Jarvis filed a notice of appeal in the probate proceeding. On February 11, 2014, after Jarvis failed to timely docket an appeal in this court, the purported appellees filed a motion in Miami County District Court seeking dismissal of the notice of appeal and an award of attorney fees incurred in bringing the motion to dismiss. Although an order dismissing that appeal is not in the appellate record currently before this court, it is undisputed that the notice of appeal was dismissed.

On May 1, 2015, our Supreme Court issued its opinion in disciplinary proceedings brought against Jarvis. *In re Jarvis*, 301 Kan. 881. Among other violations, the hearing panel had found that Jarvis "'engaged in conduct that involved dishonesty when he attempted to collect rents from [Ralph's] tenants, on behalf of [Ralph], without consulting

5

with Mr. Wood, [Ralph]'s duly appointed guardian and conservator.'" 301 Kan. at 892. The hearing panel also found:

> "[Jarvis] knew that [Ralph's] capacity was diminished and [Ralph] was at risk of harm, as [Jarvis] had reviewed the evaluations of the neurologists[, who had concluded that Ralph could no longer make critical life decisions of any kind]. Despite this knowledge and the knowledge that the court had appointed Mr. Wood to serve as guardian and conservator for [Ralph], [Jarvis] engaged in conduct that circumvented the court's order appointing Mr. Wood as [Ralph's] guardian and conservator. Specifically, [Jarvis] formed Bossaw for the purpose of collecting rents on behalf of [Ralph], without the authorization of Mr. Wood. Further, [Jarvis] filed suit in Wyandotte County District court, on behalf of [Ralph], after Mr. Wood had been appointed as guardian and conservator for [Ralph]. [Jarvis'] conduct in this regard is an egregious violation of KRPC 8.4(d)." 301 Kan. at 892.

On October 24, 2016, Jarvis started the case from which the present appeal is taken by filing in Wyandotte County District Court a "Petition to Quiet Title to Real Estate, and for Monetary Damages." The petition named Jarvis and Bossaw as petitioners, but only Jarvis, acting pro se, signed the petition; no one signed as a legal representative for Bossaw. The named defendants were Wood, both individually and in his capacity as Ralph's conservator; Iva; Charles; and Harth. Jarvis' petition is meandering and not entirely clear; for example, the articulated causes of action begin with "Count Two," and the petition contains no identified cause of action underlying "Count One." Rather, the only reference to "Count One" occurs immediately after the 24 paragraphs of alleged facts, and it merely states: "Plaintiffs pray judgment under Count One against all Defendants, except Harth, in the compensatory sum of $200,000.00; their costs herein; and for such other and further relief as the Court deems just and equitable."

The five articulated causes of action (identified by Jarvis as Counts Two through Six) were: (Count 2) a claim against Woods as conservator for Ralph, alleging conflict of interest and breach of fiduciary duty; (Count 3) a claim of "[c]loud on, and slander to

6

Bossaw's title to" the State Avenue property, based on Harth's September 17, 2013 order in the probate proceedings; (Count 4) a claim seeking to quiet title to the State Avenue property; (Count 5) a claim for "Monetary Damages for Wrongful Contempt Citation," related to the portion of Harth's September 17, 2013 order in the probate proceeding that found void the deed transferring the State Avenue property to Bossaw; and (Count 6) a 42 U.S.C. § 1983 claim alleging that all defendants "deprived [Jarvis and Bossaw] of their right to contract, buy, own, sell, use, and enjoy their property, and the right of Bossaw to employ and have the legal services of the attorney of its choice, and the right of Plaintiff[] Jarvis to practice his profession, then as a duly licensed attorney in the State of Kansas." The final count is apparently based on Harth's December 2, 2013 refusal to let Jarvis appear and argue at a hearing in the probate proceedings, which Jarvis characterizes as part of a "conspiracy" to prevent Jarvis from appearing to represent clients in the probate proceedings.

On November 7, 2016, Jarvis filed his "First Amended Petition," which purported to incorporate by reference the initially filed petition and add the following claims: a claim against Harth for her actions in the probate proceedings on October 25, 2016, when she allegedly again refused to allow him to speak at a hearing, and a request for declaratory judgment to determine whether Jarvis is the beneficiary of a life insurance policy taken out in Ralph's name, also an issue in the probate proceedings.

On November 21, 2016, Iva and Charles filed their joint motion to dismiss and for sanctions against Jarvis and Bossaw. Iva and Charles contended that on the face of the petition and the amended petition, the only claims even arguably brought against them were Count 1 (the unarticulated count set forth in the initial 24 paragraphs of the petition), Count 5 (the count based on Iva and Charles' motion for contempt in the probate proceeding), and Count 6 (the 42 U.S.C. § 1983 count). Iva and Charles argued that "Count 1" alleged no harm to Jarvis or Bossaw and, even if Count 1 intended to allege a civil conspiracy, it was barred by the applicable statute of limitations. Similarly,

Iva and Charles argued that Count 5 and Count 6 were also time barred, and in any event, they could have only been brought in a timely appeal from the probate proceeding, not as issues in the present case. The same day, Iva and Charles filed a separate joint motion to dismiss Bossaw from the case because, as an LLC, it could not appear in court except through a licensed, active attorney, which it had not done.

On December 7, 2016, Wood filed his motion to dismiss in the present case. Wood argued that Jarvis and Bossaw lacked standing to bring the claims against him related to his fiduciary duties to Ralph; they improperly sought to litigate issues determined in separate proceedings and were barred from doing so by collateral estoppel and res judicata; their claims were barred by the applicable statutes of limitations; Bossaw did not have the necessary legal representation to appear as a plaintiff; the petition failed to allege facts that could support a viable 42 U.S.C. § 1983 claim; and the petition failed to allege facts that support a viable claim for conspiracy.

On December 9, 2016, Harth filed her motion to dismiss. She argued that the claims against her should be dismissed because the Wyandotte County District Court lacked jurisdiction to overrule her decisions in her role as a district court judge in Miami County. Harth also argued that any claims by Bossaw should be dismissed because Bossaw could not proceed pro se, and that the statute of limitations barred the 42 U.S.C. § 1983 claim brought against her. Finally, Harth argued that she is protected from suit by judicial immunity.

On December 10, 2016, Jarvis executed a quitclaim deed by which he, in his role as "general managing member" of "Boss/Saw Land Holding & Mgmt. Co., L.L.C. of Kansas," purported to quitclaim the State Avenue property to himself in his role as an individual. Jarvis recorded the deed on January 6, 2017.

8

Jarvis filed his objections and responses to the motions to dismiss on January 11, 2017. Jarvis set forth many arguments as to why the motions to dismiss should fail, which can be summarized as follows: (1) the defendants' failure to pay the statutorily required fee in full at the time of filing their motions to dismiss; (2) the inclusion of certain information attached to the motions to dismiss necessarily converted them to motions for summary judgment and defendants failed to comply with the requirements for filing motions for summary judgment; (3) the district court scheduled the hearing on the motions before the expiration of the extended response time allowed for motions for summary judgment; and (4) events occurring since the filing of the present lawsuit—including the January 2017 recording of the quitclaim deed on the State Avenue property.

The Wyandotte County District Court held a hearing on the motions to dismiss on January 17, 2017. At the hearing, Jarvis stated that he did not and never had represented Bossaw as counsel, so the district court dismissed all claims in the petition ostensibly by Bossaw. Next, the district court took up Jarvis' assertion that the motions to dismiss had necessarily converted to motions for summary judgment because defense counsel had included and relied on attachments to their motions. The district court heard argument on the issues and disagreed, stating that the court would treat the motions as motions to dismiss, not motions for summary judgment, because the court could take judicial notice of events in other cases of record without converting the motions into motions for summary judgment. However, a large majority of Jarvis' remaining arguments were premised on his belief that the defendants had not complied with various requirements for summary judgment motions. Those arguments necessarily failed.

Jarvis also argued that the defendants' failure to pay the filing fee required by K.S.A. 2017 Supp. 60-2008 precluded the district court from granting their motions, as none of the defendants had paid the fee contemporaneously with the filing of their motions to dismiss. The district court rejected that argument as well, ruling that if the defendants had not yet paid the fee, the court would nevertheless "entertain their

9

motion[s] to dismiss with the order that they pay their filing fee before this case is dismissed." Jarvis pressed the point, arguing that Iva and Charles had only paid their filing fee on the day of the hearing, and Wood had yet to pay his in full. The district court ordered Wood to pay the filing fee by the end of the day. With respect to Harth, the district court found that she was exempt from paying the filing fee under the statutory exception for the State of Kansas.

After oral argument, the district court ruled from the bench that it would not convert the motions to dismiss into motions for summary judgment. The court also dismissed Bossaw from the case for failure to prosecute, dismissed all the remaining claims, and granted Charles and Iva's motion to sanction Jarvis.

After a special hearing to attempt to resolve Jarvis' objections to the proposed journal entry drafted by defense counsel, the district court issued its journal entry on the motions to dismiss on May 3, 2017. The district court dismissed Bossaw from the case for failure to prosecute, granting the respective motions to dismiss on all claims by Bossaw. Next, the court determined that the motions to dismiss "do[] not require evidence outside the pleadings, the attached exhibits, or the judicial notice taken by the Court and are therefore not being treated as Motions for Summary Judgment." The court rejected Jarvis' arguments based upon the defendants' failure to pay the filing fees for their dispositive motion, finding that Harth was excluded from the requirement, Iva and Charles had paid the filing fee prior to the hearing, and Wood had paid the fee the day of the hearing. Moreover, the court dismissed all claims against Harth under the doctrine of judicial immunity.

Turning to the claims against Wood, the district court dismissed any claims against Wood that were based on rulings by Harth as barred by "collateral estoppel or res judicata." The district court further found that the claims based on an alleged conflict of interest or breach of fiduciary duty regarded a duty owed only to Ralph as the

10

conservatee and those claims did not allege any damage to Jarvis, so Jarvis lacked standing to bring the claims. Moreover, to the extent that Jarvis sought to bring a claim of civil conspiracy and a 42 U.S.C. § 1983 claim against Wood, the court found that the applicable statutes of limitations barred those claims.

With respect to the claims against Iva and Charles, the district court dismissed the civil conspiracy claim as barred by the statute of limitations and for failure to show damages to Jarvis. The claims for "wrongful contempt citation" and for conspiracy were dismissed as similarly barred by the applicable statutes of limitations. Finally, the court held that the deed from Bossaw to Jarvis on the State Avenue property was void, as Bossaw had no interest in the State Avenue property to transfer after Harth's determination in the probate proceeding that the deed from Ralph to Bossaw was void. The district court also granted Iva and Charles' request for sanctions, awarding them $3,822. The district court concluded: "All claims dismissed on the basis of statute of limitation or judicial immunity are dismissed with prejudice. All other claims are dismissed without prejudice." Jarvis timely appeals. Wood timely cross-appealed.

On appeal, Jarvis articulates four issues, although he conclusorily asserts several other issues in off-hand comments throughout his brief. The four identified issues on appeal are (1) "Did the Trial Court erroneously interpret and apply K.S.A. [2017 Supp.] 60-2008?"; (2) "Did the Trial Court err in not treating Defendants' Motions to Dismiss as Motions for Summary Judgment?"; (3) "Are Defendants' Motions to Dismiss sufficient to dismiss Plaintiff's petition?"; and (4) "Did the Trial Court erroneously assess attorney's fees as a sanction v. Plaintiff?" Wood's sole issue on cross-appeal is whether the district court erred in dismissing some claims against him without prejudice, when all the claims against him should have been dismissed with prejudice.

11

DID THE DISTRICT COURT ERR IN ITS INTERPRETATION OF K.S.A. 2017 SUPP. 60-2008?

In relevant part, K.S.A. 2017 Supp. 60-2008(a) states: "[A]ny party filing a dispositive motion shall pay a fee in the amount of $195 to the clerk of the district court." K.S.A. 2017 Supp. 60-2008(c) states: "The state of Kansas . . . shall be exempt from paying such fee." The term "dispositive motion" includes a motion to dismiss. See K.S.A. 2017 Supp. 60-2008(b) ("As used in this section, 'dispositive motion' means a motion to dismiss."). As already noted above, the district court found that Harth was exempt from paying the fee and that the other parties' failure to pay the fee in full when they filed their motions was curable by later payment in full.

Jarvis contends that the filing fee required by K.S.A. 2017 Supp. 60-2008(a) must be paid when the dispositive motion is filed. It is uncontested that none of the parties paid their fee in full when they filed their dispositive motions. The only authority Jarvis cites in support of his position is the language of K.S.A. 2017 Supp. 60-2008 itself and the comment regarding that statute as published in the 2017-18 supplement to the fifth edition of Kansas Law and Practice. That comment characterizes K.S.A. 2017 Supp. 60-2008 "[a]s part of an effort to compensate for a reduction in funding for the judiciary from the general fund." 5 Gard, Casad & Mulligan, Kansas Law and Practice: Kansas C. of Civ. Proc. Annot. § 60-2008, comment (2017-18 ed.). Jarvis asserts that the district court's interpretation of K.S.A. 2017 Supp. 60-2008 in the present case "rewrites" the statute and defeats its purpose as a "revenue-generating provision."

Resolution of this issue requires analysis of K.S.A. 2017 Supp. 60-2008. "[I]ssues of statutory interpretation and construction raise questions of law reviewable de novo on appeal." *Heimerman v. Rose*, 307 Kan. 710, 715-16, 414 P.3d 745 (2018).

With respect to Harth, Jarvis argues that she is not exempt from the filing fee requirement of K.S.A. 2017 Supp. 60-2008(a). In response, Harth first argues, for the first

12

time on appeal, that Jarvis lacks standing to raise this issue because the only potential "injury" he suffered by Harth failing to pay the filing fee is a general injury as a citizen; the court—not Jarvis—was deprived of the fee. Jarvis filed no reply brief in this appeal, so he does not address the standing issue.

"'The existence of . . . standing [is a] question[] of law over which an appellate court's scope of review is unlimited.'" *Kansas Bldg. Industry Workers Comp. Fund v. State*, 302 Kan. 656, 676, 359 P.3d 33 (2015).

Harth's standing argument poses an interesting question; generally, Kansas appellate courts have found a lack of standing where the complaining party is affected by the offending act or failure to act no more than any other taxpayer is affected. For example, when a taxpayer wishes to sue a governmental entity and "claims standing by virtue of living in and paying taxes to the governmental entity he or she seeks to sue," this tenuous relationship cannot convey standing upon the would-be litigant. See *Theisman v. City of Overland Park*, No. 104,193, 2011 WL 2637452, at *8 (Kan. App. 2011) (unpublished opinion). That said, in the present case, Jarvis was at least arguably injured by the district court's interpretation of the statute in that he was therefore obliged to respond to Harth's ultimately successful motion to dismiss.

In any event, this court need not resolve the issue because even if Jarvis has standing to argue that Harth is not exempt from the fee requirement imposed by K.S.A. 2017 Supp. 60-2008, his argument fails on the merits.

> "'"When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history or other background considerations to

construe the legislature's intent. [Citations omitted.]"'" *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016).

The plain language of K.S.A. 2017 Supp. 60-2008(c) states: "The state of Kansas and all municipalities in this state, as defined in K.S.A. 12-105a, and amendments thereto, shall be exempt from paying such fee." As Harth correctly argues, she is a Kansas district judge civilly sued solely for the acts in her official capacity, so under the Kansas Tort Claims Act, she is entitled to representation by the State of Kansas in the present case. See K.S.A. 2017 Supp. 75-6108(a) (stating that upon a state employee's request, "a governmental entity shall: (1) [p]rovide for the defense of any civil action or proceeding against such employee" except in circumstances not applicable here); K.S.A. 2017 Supp. 75-6102(c) ("'Governmental entity' means state or municipality.") and (d)(1) (defining "employee" to include elected and appointed officers of branches of government); K.S.A. 20-2912 (providing for the appointment of district judges in Kansas). As a matter of fact, the State of Kansas, through the attorney general's office, has represented and continues to represent Harth in this case. Therefore, under the plain language of the statute, when considered in the context of other relevant statutes, Harth was exempt from paying the fee required by K.S.A. 2017 Supp. 60-2008(a). Jarvis' assertions to the contrary fail.

Jarvis also argues that the district court erred in finding that Charles, Iva, and Wood satisfied K.S.A. 2017 Supp. 60-2008(a) despite paying the required filing fees after the filing, as opposed to paying the fee at the time of filing their dispositive motions. As already stated above, K.S.A. 2017 Supp. 60-2008(a) states: "[A]ny party filing a dispositive motion shall pay a fee in the amount of $195 to the clerk of the district court." K.S.A. 2017 Supp. 60-2008(a). Although there is no caselaw determining whether a party's failure to pay the fee required by K.S.A. 2017 Supp. 60-2008(a) in full *at the time of filing* precludes the district court from considering the motion, Charles and Iva

14

accurately point out that this court has considered nearly identical language in another statute.

K.S.A. 2014 Supp. 60-256(h)(1), which was effective only from July 1, 2014, until July 1, 2015, stated: "[A]ny party filing a motion for summary judgment shall pay a fee in the amount of $195 to the clerk of the district court." In a single case, this court examined whether K.S.A. 2014 Supp. 60-256(h)(1) set forth a jurisdictional requirement that must be satisfied for the district court to consider the motion before it. See *Gold Mine Investments, Inc. v. Girard National Bank*, No. 114,464, 2017 WL 1198032, at *3 (Kan. App.) (unpublished opinion), *rev. denied* 306 Kan. 1317 (2017). This court determined that in the absence of express language indicating that paying the filing fee was jurisdictional and in light of caselaw "stand[ing] for the proposition that payment of docketing fees is not a requirement to perfect an appeal," the filing fee set forth in K.S.A. 2014 Supp. 60-256(h)(1) was not jurisdictional. 2017 WL 1198032, at *4 (citing cases).

Jarvis has offered no reason why this court should stray from the sound rationale in *Gold Mine Investments, Inc.* K.S.A. 2017 Supp. 60-2008(a) does not expressly indicate that the Legislature intended the filing fee to be jurisdictional, and the district court in the present case did not err in holding that the eventual payment in full of the fee satisfied the statute's requirements.

### DID THE DISTRICT COURT ERR IN DECLINING TO TREAT THE DEFENDANTS' MOTIONS TO DISMISS AS MOTIONS FOR SUMMARY JUDGMENT?

K.S.A. 2017 Supp. 60-212(d) states: "If, on a motion [to dismiss] under subsection (b)(6) or (c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under K.S.A. 60-256, and amendments thereto." The parties in the present case attached many documents to their pleadings and motions to dismiss, and they referred in their pleadings and

15

motions to events and orders in the probate proceeding, the limited action suit, and the disciplinary proceedings against Jarvis. At the January 17, 2017 hearing on the motions to dismiss, Jarvis argued to the district court that consideration of orders and motions filed in the probate proceeding, the limited action suit, and the disciplinary proceeding against him necessarily converted the motions to dismiss into motions for summary judgment. In addition to arguing that the district court erred by declining to treat the motions to dismiss as motions for summary judgment, Jarvis also raised related arguments such as (1) he was improperly denied the 21-day response period allowed a party responding to a motion for summary judgment, and (2) the defendants failed to make the statements of uncontroverted facts that Supreme Court Rule 141(a)(1) (2018 Kan. S. Ct. R. 205) requires in motions for summary judgment. The district court disagreed and held that it would consider the attachments and the additional litigation, yet the "motion[s] to dismiss [are] not converted into a motion for summary judgment and the Court went forward on the motions to dismiss."

Different panels of this court have reached inconsistent conclusions about whether district courts considering motions to dismiss may consider orders entered by another court in another case without converting the motions to dismiss into motions for summary judgment. Some panels have opined that, in the context of a motion to dismiss, taking judicial notice of other court cases and the orders issued therein requires conversion of the motion to dismiss into a motion for summary judgment. See, e.g., *Consolver v. Pistotnik*, No. 115,197, 2017 WL 2715122, at *3 (Kan. App. 2017) (unpublished opinion) (citing K.S.A. 2017 Supp. 60-212[d]) (stating in dicta that "wholesale notice of an entire court file from a separate case in conjunction with a motion to dismiss likely would convert the motion to one for summary judgment"); *Silks v. Gnaegy*, No. 108,127, 2013 WL 646499, at *4 (Kan. App. 2013) (unpublished opinion) (holding that the district court "improperly considered information outside the petition in ruling on a motion to dismiss" by taking judicial notice of proceedings in a related divorce action and a related probate action).

16

Other panels of this court have held the opposite. See, e.g., *Mashaney v. Board of Indigents' Defense Services*, 49 Kan. App. 2d 596, 610, 313 P.3d 64 (2013) (citing federal law and a legal treatise for the proposition that "when matters outside the face of the pleading are proper objects for judicial notice, a motion to dismiss need not be treated as a summary judgment motion"), *aff'd in part, rev'd in part on other grounds* 302 Kan. 625, 355 P.3d 667 (2015); *Rhoten v. Hren*, No. 101,826, 2010 WL 2977939, at *4 (Kan. App. 2010) (unpublished opinion) (citing federal law and legal treatise for the proposition that "[w]hen matters outside the pleadings are subject to judicial notice, a motion to dismiss need not be treated as one for summary judgment"); *Landrith v. Summers*, No. 112,315, 2015 WL 1784900, at *4-5 (Kan. App. 2015) (unpublished opinion) (noting that the district court found "that taking judicial notice of prior court proceedings did not require it to treat the motions as motions for summary judgment" and considering on appeal filings in other court cases when reviewing the district court's conclusion that res judicata required dismissal of the case before it), *rev. denied* 303 Kan. 1078 (2016).

In *Rhoten v. Dickson*, 290 Kan. 92, 100-02, 223 P.3d 786 (2010), the Kansas Supreme Court reviewed a case in which the defendants—one through a motion to dismiss and one through a motion to dismiss or, in the alternative, for summary judgment—asked the district court to take judicial notice of certain orders and pleadings filed in separate federal lawsuits. Our Supreme Court stated:

> "[D]efendants should have styled their motions to dismiss as motions for summary judgment and complied with Rule 141. To do otherwise risks confusion among the litigants and the court and runs a substantial prejudicial risk to the fair presentation of the facts and law. The district court should have treated the pleadings as motions for summary judgment and insisted on compliance with [Rule 141]." 290 Kan. at 103.

The Kansas Supreme Court recently cited the language quoted above, continuing on to note that in *Rhoten*, it had "held that a district court erred when it did not require litigants to comply with Rule 141 after materials outside the pleadings were argued in

17

relation to a motion to dismiss." See *Sperry v. McKune*, 305 Kan. 469, 490, 384 P.3d 1003 (2016). This appears to be the most recent statement on the subject from our Supreme Court, and it supports the conclusion that the district court in the present case erred by failing to convert the defendants' motions to dismiss into motions for summary judgment and enforcing Rule 141.

However, in *Sperry*, our Supreme Court continued:

"[T]he [*Rhoten*] court also noted the error could be harmless and cited cases supporting harmlessness when, for example, (1) the district court had excluded from its consideration any matters outside those in the petition; (2) the additional material did not otherwise infect the district court's consideration; or (3) the subsequent filings 'allowed for the proper presentation of the minimal number of uncontroverted facts required to establish defendants' entitlement' to relief. [Citation omitted.]" 305 Kan. at 490.

This language from *Sperry* dovetails nicely with Kansas appellate courts' long-established understanding that whether a district court erred by considering matters outside the pleadings in the context of a motion to dismiss is not necessarily dispositive of the appeal. Rather, a district court's failure to treat motions to dismiss as motions for summary judgment when considering matters outside the pleadings does not require reversal "if the district court's decision can be affirmed under the standards governing summary judgments." See *Lehman v. City of Topeka*, 50 Kan. App. 2d 115, 117-18, 323 P.3d 867 (2014) (citing *Davidson v. Denning*, 259 Kan. 659, 667, 914 P.2d 936 [1996], and *Admire Bank & Trust v. City of Emporia*, 250 Kan. 688, 692, 829 P.2d 578 [1992]).

Thus, although Jarvis prevails on his argument that the district court erred by refusing to treat the motions to dismiss as motions for summary judgment and by refusing to enforce Rule 141, the question becomes whether the district court's decision can be affirmed regardless "under the standards governing summary judgments." See *Lehman*,

50 Kan. App. 2d at 117-18. Resolving this question requires analyzing the merits of the motions to dismiss, undertaken below.

## DID THE DISTRICT COURT ERR IN FINDING THAT JARVIS' CLAIMS COULD NOT GO FORWARD?

Jarvis articulates his third issue as: "Are Defendants' Motions to Dismiss legally insufficient to dismiss Plaintiff's entire petition?" However, the entirety of Jarvis' argument on this issue spans less than a page and a half, and largely consists of the applicable standards of review and a reminder that Jarvis twice argued to the district court that disregarding matters outside the pleadings, defendants' arguments for dismissal should fail. Jarvis does not further explain the alleged insufficiency of the defendants' arguments, nor does he acknowledge that this court may still affirm if the district court could have reached the same conclusion under the appropriate standards for considering a motion for summary judgment.

"[T]his court liberally construe[s] pro se pleadings." *Mundy v. State*, 307 Kan. 280, 304, 408 P.3d 965 (2018). However, "[a]lthough this court should liberally construe pro se pleadings, 'it cannot advocate for either side and will not consider arguments not raised or properly briefed.'" *State v. Brown*, No. 109,814, 2015 WL 3555357, at *6 (Kan. App. 2015) (unpublished opinion), *rev. denied* 305 Kan. 1253 (2016). "'Where the appellant fails to brief an issue, that issue is waived or abandoned.'" *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018).

As stated above, Jarvis has not argued that the motions to dismiss, if converted to motions for summary judgment and examined under that standard, would fail. Instead, he conclusorily argues that if the court discards the extraneous materials, the remaining motions to dismiss do not succeed. But Kansas appellate courts do not review a district court's failure to treat a motion to dismiss as a motion for summary judgment by

19

examining whether the motions to dismiss would have been successful without consideration of the extraneous materials. Instead, the standard of review is whether, if considered under the standard for summary judgment motions, the information before the district court is sufficient to warrant the district court's findings. Jarvis has not briefed this issue and, as such, has waived and abandoned it.

In the interest of ensuring a just resolution to this appeal, however, the claims are addressed below. On the uncontroverted facts of the case, and considering all the evidence in the light most favorable to Jarvis, even if the district court had properly considered the motions as motions for summary judgment, the defendants would have prevailed.

The standards for review of motions for summary judgment are well established.

"'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.'" *Patterson v. Cowley County*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

*Claims against Harth*

Jarvis' initial petition articulated only one claim against Harth—a 42 U.S.C. § 1983 claim that she and the other defendants deprived Jarvis of his alleged right "to practice his profession, then as a duly licensed attorney in the State of Kansas." In his first amended petition, Jarvis added another claim against Harth when she allegedly

20

refused to allow him to speak at a hearing in the probate proceeding. It is uncontroverted that all the claims against Harth stem from actions she took as the presiding judge in the probate proceeding and, as such, the district court correctly held that they were barred by judicial immunity.

"Judicial immunity is a long and firmly established common-law rule. It was described by the United States Supreme Court in the following words: 'Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine, in *Bradley v. Fisher*, 13 Wall. 335[, 20 L. Ed. 646] (1872). This immunity applies even when the judge is accused of acting maliciously and corruptly, and it "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." It is a judge's duty to decide all cases within his [or her] jurisdiction that are brought before him [or her], including controversial cases that arouse the most intense feelings in the litigants. His [or her] errors may be corrected on appeal, but he [or she] should not have to fear that unsatisfied litigants may hound him [or her] with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.' [Citations omitted.]" *Jarvis v. Drake*, 250 Kan. 645, 648, 830 P.2d 23 (1992).

Moreover, judicial immunity has since been codified in the Kansas Tort Claims Act. See K.S.A. 2017 Supp. 75-6104 ("A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from: . . . [b] judicial function."). In this context, judicial immunity exists for "judicial function," which is defined as actions involving an exercise of discretion, judgment, or skill. See *Cook v. City of Topeka*, 232 Kan. 334, 337-38, 654 P.2d 953 (1982).

All the actions underlying Jarvis' claims against Harth stem from her engaging in judicial function. Even resolving all facts and reasonable inferences in Jarvis' favor, there

21

is no genuine issue on any fact material to whether Harth's judicial function underlies Jarvis' claims against her. Thus, if the district court had considered the motions before it under the summary judgment standards, the district court would have been correct to grant summary judgment in Harth's favor.

*Claims against other defendants—Count I*

Jarvis did not articulate a specific cause of action in Count I. Rather, his petition set forth 24 paragraphs of asserted facts, then stated: "Wherefore, Plaintiffs pray judgment under Count One against all Defendants, except Harth, in the compensatory sum of $200,000.00; their costs herein; and for such other and further relief as the Court deems just and equitable." At the January 17, 2017 hearing, Wood's counsel characterized Count I as a claim of civil conspiracy and argued that it was barred by the applicable statute of limitations and also failed on its merits. Similarly, Iva and Charles' attorney expressed confusion about Count I. The district court characterized Count I as "the civil conspiracy claim," and Iva and Charles' attorney from that point did as well; he also argued that it was barred by the statute of limitations. When Jarvis responded to Iva and Charles' arguments, the following occurred:

> "[Jarvis]: The first 24 paragraphs are introductory paragraphs that go with all of the counts into which they are incorporated.
> "THE COURT: Here is the problem, Mr. Jarvis. You don't, in your petition, put in a Count I. You start with Count II.
> "MR. JARVIS: All right. Then if I don't have one, they can hardly dismiss it.
> "THE COURT: All right. I'll dismiss it right now since there's—you claim the first 24 counts are—I mean, paragraphs are not a count. If you later argue that there's any count to be found in that, it is dismissed because now you're abandoning it. It starts—if you read your petition, you start alleging Count II.
> "MR. JARVIS: I'm asking—
> "THE COURT: But you ask in the paragraph—the last paragraph for judgment.
> "MR. JARVIS: I'm saying if there isn't a Count I, they can't dismiss it.

"THE COURT: Well, you can't go forward with it.

"MR. JARVIS: All right."

Jarvis asked to amend his petition to renumber it and to add facts, a request the district court denied.

Jarvis has not argued on appeal that the district court erred by finding there was no articulated cause of action in "Count I" of the petition. Moreover, to the extent that the petition has been or can be liberally construed to articulate a claim of civil conspiracy, the district court correctly held that such a claim is barred by the applicable statute of limitations.

"A civil conspiracy claim does not become actionable without the commission of some wrong that would give rise to a cause of action independent of the conspiracy theory. . . . [W]hen the underlying tort is time barred, the civil conspiracy claim is time barred as well." *Kirk v. NCI Leasing, Inc.*, No. 99,672, 2009 WL 112824, at *6 (Kan. App.) (unpublished opinion), *rev. denied* 289 Kan. 1279 (2009).

Here, the tort underlying the potential civil conspiracy claim in Count I is unclear. As the district court noted, however, there is a two-year statute of limitations on most tort claims in Kansas. "K.S.A. [2003] Supp. 60-513(a) . . . is the general statute of limitations for tort actions and provides for a 2-year statute of limitation period from the time the cause of action accrues." *Hallam v. Mercy Health Center of Manhattan, Inc.*, 278 Kan. 339, 341, 97 P.3d 492 (2004). K.S.A. 2017 Supp. 60-514 provides a one-year statute of limitations for other, specifically enumerated torts, such as "[a]n action for libel or slander."

Jarvis filed his petition on October 24, 2016. None of the factual allegations in the 24 paragraphs preceding the request for relief that ostensibly relate to Count I involve

23

events that occurred later than 2013. Thus, none of the events even potentially underlying Count I occurred within the two years before Jarvis filed this lawsuit. Jarvis has not argued and did not argue to the district court that a different statute of limitations controlled the question or that circumstances existed that would have tolled the statute of limitations. There is no genuine issue of material fact as to the statute of limitations controlling the civil conspiracy claim in Count I and no genuine issue of material fact as to the timing of the events underlying Count I. Therefore, the district court would have been correct to grant summary judgment in favor of Charles, Iva, and Wood on Count I.

*Count II*

Count II is a claim that Wood had a conflict of interest acting as Ralph's conservator and that he breached the fiduciary duty he owed Ralph in that role by receiving rent from Ralph's rental properties, rather than ensuring that Ralph or Bossaw received the rent. To the extent that Count II may be liberally construed as being brought by Jarvis—despite the prayer for relief's identification of Bossaw as the party seeking relief—against Wood, consideration of Count II under the summary judgment standard would also result in granting summary judgment in Wood's favor. As the district court held, Jarvis has no standing to bring these claims because "Mr. Wood owed no fiduciary duty to Mr. Jarvis."

> "'Standing is a party's right to make a legal claim or seek judicial enforcement of a duty or right. While standing is a requirement for case-or-controversy, *i.e.,* justiciability, it is also a component of subject matter jurisdiction that may be raised at any time. . . .
>
> "Kansas' standing requirement is grounded in the separation of powers doctrine which is implicit in our State Constitution. Under the traditional test for standing in Kansas, a person must demonstrate that [1] he or she suffered a cognizable injury and [2] that there is a causal connection between the injury and the challenged conduct. This traditional standing test has been utilized repeatedly by the Kansas Supreme Court.

24

[Citations omitted.]" *Kansas Bldg. Industry Workers Comp. Fund v. State*, 302 Kan. 656, 678-79, 359 P.3d 33 (2015).

"The existence of standing and jurisdiction are both questions of law over which appellate courts exercise de novo review." *Board of Sumner County Comm'rs v. City of Mulvane*, 43 Kan. App. 2d 500, 507, 227 P.3d 997 (2010).

It is well-established—and uncontested in the present case—that the formal legal proceedings against Wood as Ralph's conservator created a fiduciary relationship between Wood and Ralph. See *Denison State Bank v. Madeira*, 230 Kan. 684, 691, 640 P.2d 1235, *modified on other grounds* 230 Kan. 815, 640 P.2d 1235 (1982). Under this relationship, Wood "is bound to act in good faith and with due regard to" Ralph's interests. See *Monarch Transport, LLC v. FKMT, LLC*, No. 105,487, 2012 WL 3629861, at *8 (Kan. App. 2012) (unpublished opinion) (citing *Linden Place v. Stanley Bank*, 38 Kan. App. 2d 504, 509, 167 P.3d 374 [2007]). However, Wood owed no fiduciary duty to Jarvis, so any injury caused by breach of that duty, as a matter of law, would not be to Jarvis. Thus, Jarvis lacks standing to bring this claim. See *Hart v. U.S.D. No. 244 Board of Education*, No. 110,172, 2014 WL 3020476, at *10 (Kan. App. 2014) (unpublished opinion) (finding individual who was not owed fiduciary duty lacked standing to pursue a claim for any breach of that duty). There is no disputed material fact that affects this analysis, and the district court would have been correct to grant summary judgment in Wood's favor as to Count II.

*Count III and Count IV*

Count III is a claim of "cloud on, and slander to Bossaw's title to real estate at" the State Avenue property. Count IV seeks to quiet title to the State Avenue property. Both counts assert that, contrary to the holding in the probate proceeding, the deed transferring the State Avenue property from Ralph to Bossaw was valid. The petition contends that

25

Wood, Charles, and Iva improperly obtained an order in the probate proceeding that holds otherwise and improperly clouds Bossaw's title to the property. Any injury avoided or rectified by quieting the title to the State Avenue property is an injury suffered by Bossaw, not by Jarvis personally. Thus, as with Count II, Jarvis lacks standing personally to bring the claims in Count III and Count IV.

Moreover, Bossaw was dismissed from the lawsuit for failure to make an appearance, and Bossaw has not appealed that dismissal. Because Bossaw is an L.L.C., a licensed attorney must represent it in court, yet no licensed attorney entered an appearance on Bossaw's behalf. See *Jarvis v. White*, No. 116,179, 2017 WL 3001034, at *3 (Kan. App. 2017) (unpublished opinion) ("'[A]n appearance in court of a corporation by an agent other than a licensed attorney is not proper since a corporation is an artificial entity without the right of self-representation.'") (quoting *Atchison Homeless Shelters, Inc. v. Atchison County*, 24 Kan. App. 2d 454, Syl. ¶ 2, 946 P.2d 113, *rev. denied* 263 Kan. 885 [1997]). Jarvis informed the district court at the January 17, 2017 hearing that he was not appearing on behalf of Bossaw, nor could he.

Therefore, even under the summary judgment standard, the district court would have been correct in finding that as a matter of law, Jarvis lacked standing to bring the claims in Count III and Count IV, and the district court would have been correct to grant summary judgment in favor of Wood, Charles, and Iva.

*Count V*

Count V is a claim against Iva, Charles, and Wood seeking damages based on their wrongful filing of a motion for contempt in the probate proceeding, which filing then required Jarvis and Bossaw "to appear in [the probate c]ourt to show cause, why they should not be punished for indirect civil contempt of Court." Count V also refers to the order entered at that hearing by Harth finding void the deed purporting to transfer the

State Avenue property. To the extent that Count V seeks to challenge that order, it may not for the reasons already stated above. To the extent that Count V is based on the filing of a motion for contempt in the probate proceeding, the district court in the present case correctly held that merely filing a motion which was ultimately denied does not create a cause of action.

Moreover, as the district court in the present case also noted, Jarvis alleged no personal injury he suffered as a result of the motion for contempt in the probate case and the hearing thereon. At most, Jarvis alleged at the January 17, 2017 hearing that the motion for contempt injured him because after the hearing on the motion, his clients in the probate proceeding left town and were no longer his paying clients. However, when the district judge asked if that was the injury Jarvis was depending on to show standing, Jarvis said it was not. Finally, even if there were a cognizable tort claim Jarvis could bring based on the motion for contempt and the hearing thereon, it would be barred by the statute of limitations, as the hearing on the motion for contempt and the orders issued therein occurred on September 13, 2013, more than three years before Jarvis filed this lawsuit. See *Hallam*, 278 Kan. at 341 ("K.S.A. [2017] Supp. 60-513[a] . . . is the general statute of limitations for tort actions and provides for a 2-year statute of limitation period from the time the cause of action accrues.").

Therefore, even under the summary judgment standard, the district court would have been correct in finding that the claims in Count V were barred as a matter of law, and it would have been correct to grant summary judgment in favor of Wood, Charles, and Iva.

*Count VI*

Count VI is Jarvis' 42 U.S.C. § 1983 claim that all of the defendants, acting under color of law, engaged in a conspiracy to deprive him of his right "to practice his

profession, then as a duly licensed attorney in the State of Kansas." Once again, the district court found that this claim was barred by the applicable statute of limitations. It is undisputed that the events underlying this claim occurred on or before December 2, 2013, when Harth refused to allow Jarvis to participate in a hearing in the probate proceeding. Jarvis wished to argue a motion to set aside Wood's appointment as conservator, but Harth would not let him appear. The district court in the present case dismissed the claims in Count VI as barred by the statute of limitations.

"Our Supreme Court has held that § 1983 claims brought in state court are bound by K.S.A. 60-513(a)(4)'s two-year statute of limitations." *Srivastava v. University of Kansas*, No. 118,329, 2018 WL 1770325, at *6 (Kan. App. 2018) (unpublished opinion) (citing *Whye v. City Council for City of Topeka*, 278 Kan. 458, 459, 102 P.3d 384 [2004]). As with many of Jarvis' other claims, it is undisputed that this claim is based on events that occurred more than two years before Jarvis filed his lawsuit. Thus, this claim is also barred by the applicable statute of limitations. Even under the summary judgment standard, the district court would have been correct in finding that the claims brought in Count VI were barred as a matter of law and the district court would have been correct to grant summary judgment in favor of the defendants.

*Count VII*

It is undisputed that Count VII, which Jarvis brought in his first amended petition, is solely against Harth for acts she took in her role as a district judge presiding over the probate proceeding. As already discussed above, Harth has judicial immunity from such claims. Therefore, even under the summary judgment standard, the district court would have been correct to grant summary judgment in Harth's favor on this count.

*Count VIII*

Count VIII is a request for declaratory judgment that Jarvis is the beneficiary of a life insurance policy in Ralph's name. As the first amended petition states, it is undisputed that this matter already was decided in the probate proceedings; Harth held that Jarvis is not the beneficiary. "Kansas law is clear that a declaratory action is not a proper 'avenue for relitigation of a legal issue already decided by a tribunal in which an actual controversy is still pending and from which an orderly appeal process may be pursued.'" *Wichita Computer & Supply, Inc. v. Mulvane State Bank*, 15 Kan. App. 2d 258, 261-62, 805 P.2d 1255 (1991).

Although it is not entirely clear from the record on appeal whether the probate proceeding is still pending, it *is* clear that the issue of the proper beneficiary on the life insurance policy in question has been decided therein. The rationale in *Wichita Computer & Supply, Inc.* provides that a declaratory action brought in a different Kansas district court is not a proper route to challenge that decision. Accordingly, even under the summary judgment standard, the district court would have been correct to grant summary judgment on this claim in favor of the defendants.

*Conclusion*

For all the reasons set forth above, the record on appeal shows that even if the district court had properly considered the motions before it as motions for summary judgment and applied the appropriate summary judgment standards, "'there is no genuine issue as to any material fact and the [defendants are] entitled to judgment as a matter of law.'" See *Patterson*, 307 Kan. at 621. Thus, the district court did not err in granting the defendants' motions to dismiss and in finding that Jarvis' claims could not go forward.

29

DID THE DISTRICT COURT ERR IN SANCTIONING JARVIS?

As stated above, at the January 17, 2017 hearing, the district court considered and ruled on Charles and Iva's motion to sanction Jarvis. The district court awarded sanctions of $3,822 "for the filing of this action with no basis." Jarvis' arguments on this point are meandering at best, but he asks this court to find that the district court erred in awarding sanctions because Charles and Iva did not identify the statute under which they sought sanctions. However, Jarvis also concedes that "it may be presumed [Charles and Iva were] proceeding under [K.S.A. 2017 Supp.] 60-211."

There is no need for such presumption. Charles and Iva's motion to dismiss explicitly cited K.S.A. 2017 Supp. 60-211(b)(2): it argued that the petition and amended petition were "frivolous, intended to harass the defendants, and [were] not warranted by existing law"; and it stated their belief that they were "entitled to sanctions pursuant to K.S.A. [2017 Supp.] 60-211(c) including expenses and reasonable attorney fees for defending the action." At the hearing on the motions to dismiss, Charles and Iva's counsel stated that they were seeking sanctions "under [K.S.A. 2017 Supp.] 60-211."

The remainder of Jarvis' arguments regarding the sanctions imposed in this case challenge either the propriety of the reasons given for the imposition or the amount imposed.

> "Imposition of sanctions pursuant to K.S.A. 60-211 is discretionary, and the court's ruling on sanctions will not be disturbed on appeal absent an abuse of discretion. Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. [Citations omitted.]" *Thornburg v. Schweitzer*, 44 Kan. App. 2d 611, 625, 240 P.3d 969 (2010), *rev. denied* 292 Kan. 969 (2011).

30

K.S.A. 2017 Supp. 60-211(b)(2) directs that a signed pleading filed with the court certifies that, after a reasonable inquiry, the signer believes that "the claims, defenses and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law." K.S.A. 2017 Supp. 60-211(c) continues:

> "If, after notice and a reasonable opportunity to respond, the court determines that subsection (b) has been violated, the court may impose an appropriate sanction on any attorney, law firm or party that violated the statute or is responsible for a violation committed by its partner, associate or employee. The sanction may include an order to pay to the other party or parties [the] reasonable expenses, including attorney's fees, incurred because of the filing of the pleading, motion or other paper."

In granting the request for sanctions in the present case, the district court stated that it awarded sanctions because the action was baseless. Jarvis argues that this finding was based at least in part on its findings that certain of Jarvis' claims were barred by the applicable statute of limitations and that consideration of the statutes of limitations was error because a statute of limitations is an affirmative defense that was not properly pled in the present case. First, Jarvis' argument that the statute of limitations arguments were not properly pled by the defendants fails. All the defendants raised statutes of limitations in their motions to dismiss. By doing so, all the defendants presented the affirmative defenses involving statutes of limitations as required by K.S.A. 2017 Supp. 60-212(b).

Moreover, for all of the reasons already stated above in the substantive analysis of Jarvis' claims, the district court did not abuse its discretion in finding that those claims had no sound legal basis, as the declaratory action was brought for an improper reason and all of the remaining claims were barred as a matter of law by statutes of limitations, a lack of standing on Jarvis' part, and/or judicial immunity. Although the district court did not explicitly consider certain factors articulated in *Wood v. Groh*, 269 Kan. 420, 431, 7 P.3d 1163 (2000), as relevant to whether and how to sanction a party under K.S.A. 60-

31

211, this court has previously concluded that the failure to explicitly consider the *Wood* factors is harmless "when there is sufficient evidence that he or she considered all the evidence on the record when awarding sanctions." See *Brown Family Trust v. Taylor*, No. 112,935, 2015 WL 8590390, at *4 (Kan. App. 2015) (unpublished opinion), *rev. denied* 305 Kan. 1251 (2016).

Finally, Jarvis argues that the district court erred in awarding the amount of $3,822 based on only the Schlatters' counsel's assertion that the costs and fees incurred in arguing their motion to dismiss amounted to that sum. He offers no pertinent legal authority for his underlying premise that there must be additional evidence, such as an affidavit from counsel, to support this sanction amount. Jarvis cites *Sheila A. v. Whiteman*, 259 Kan. 549, 913 P.2d 181 (1996), as an example of our Supreme Court's recognition of the errors the district court committed herein. But *Sheila A.* addressed the award of attorney fees under the prevailing party attorney fee provision in 42 U.S.C. § 1988, the federal civil rights statute. 259 Kan. at 561. This federal statute utilizes a very specific calculus, approved by the United States Supreme Court, to determine the fees recoverable by a party that prevails in a federal civil rights case. 259 Kan. at 563-69. The present case involves a sanction under K.S.A. 2017 Supp. 60-211(c), not the recovery of attorney fees pursuant to 42 U.S.C. § 1988. Therefore, *Sheila A.* does not control here.

"This court has previously upheld sanctions based on attorney fees as reasonable without reference to an affidavit or similar evidence. *New Discovery Products, Inc. v. Flambeau Corp.*, 17 Kan. App. 2d 852, 860-61, 844 P.2d 768 (1993) (finding $5,000 sanction and $2,400 in attorney fees reasonable for discovery violations that delayed trial several days)." *Gant v. Birk*, No. 114,823, 2017 WL 3203567, at *22 (Kan. App.) (unpublished opinion), *rev. denied* 307 Kan. 986 (2017). However, in *Gant*, a panel of this court also recognized that "[m]ore recently, . . . the Kansas Supreme Court remanded a case to determine the amount of attorney fees imposed for a discovery violation when no affidavit of attorney fees was in the record. *Schoenholz v. Hinzman*, 295 Kan. 786,

32

802-03, 289 P.3d 1155 (2012)." *Gant*, 2017 WL 3203567, at \*22. In *Gant*, as Jarvis does here, the appellant argued that the district court erred by setting the amount of sanctions even though opposing "counsel did not provide any evidence of the actual amount of expenses incurred." 2017 WL 3203567, at \*22. Citing *Schoenholz*, this court in *Gant* remanded the case before it "to redetermine the amount of sanctions based on an affidavit of attorney fees from plaintiff's counsel." 2017 WL 3203567, at \*22.

This court need not do the same, however, because the present case is factually and materially distinguishable from *Schoenholz*. In *Schoenholz*, the statute authorizing the sanctions stated: "'[T]he judge *shall* require the party failing to obey the [discovery] order or the attorney advising such party or both to pay the reasonable expenses, including attorney fees, caused by the failure'" barring certain specified circumstances. 295 Kan. at 802 (quoting K.S.A. 2008 Supp. 60-237[b][2][E]). Here, the sanctions allowed pursuant to K.S.A. 2017 Supp. 60-211(c) "*may include* an order to pay to the other party or parties [the] reasonable expenses, including attorney's fees, incurred because of the filing of the pleading." (Emphasis added.) Thus, under the plain language of K.S.A. 2017 Supp. 60-211(c), the sanctions are not limited to reasonable expenses, including attorney fees, and are amenable to the district court more widely exercising its discretion than it may in the context of the mandatory sanctions of the statute at issue in *Schoenholz*.

Here, Charles and Iva's counsel advised the court at the January 17, 2017 hearing that he had paid the $195 filing fee for the motion to dismiss; his billing rate was $250 per hour; his associate who assisted on the case billed at $235 per hour; he spent approximately one hour preparing for and three hours driving to the January 17, 2017, hearing; and the total bill through the conclusion of the January 17, 2017, hearing was $3,822. Once the filing fee and counsel's time spent preparing for, traveling to and attending the January 17, 2017 hearing are deducted from the total, that leaves $2,252. Even if all of that time is attributed to associate counsel, it is fewer than 10 billable hours,

which is not unreasonable for deciphering Jarvis' initial petition, his first amended petition, and drafting Charles and Iva's motion to dismiss. The district court did not abuse its discretion by accepting the assertions of counsel that the reasonable costs and fees incurred by Charles and Iva amounted to $3,822.

### DID THE DISTRICT COURT ERR IN DISMISSING SOME OF JARVIS' CLAIMS AGAINST WOOD WITHOUT PREJUDICE?

In its journal entry of judgment on the motions now at issue, the district court concluded: "All claims dismissed on the basis of statute of limitation or judicial immunity are dismissed with prejudice. All other claims are dismissed without prejudice." In his cross-appeal, Wood argues that all the claims against him should have been dismissed with prejudice. Specifically, Wood contends that Count II was dismissed without prejudice for failure to state a claim upon which relief could be granted, when it should have been dismissed with prejudice as barred by the statute of limitations. Although Wood does not explicitly argue that Counts III and IV were similarly erroneously dismissed without prejudice, his general arguments that all claims against him should have been dismissed with prejudice implicates these two claims as well.

The journal entry of judgment states, with respect to those claims against Wood not dismissed on the basis of the applicable statutes of limitations:

> "The claim in Count II for Conflict of Interest and Breach of Fiduciary Duty is dismissed
> based on the fact that Mr. Wood owed no fiduciary duty to Mr. Jarvis. The claims in
> Count II and Count III for Slander of Title, and Count IV for Quiet Title (for the [State
> Avenue property]) were all previously ruled upon by Judge Harth in the Guardian and
> Conservatorship of Ralph J. Schlatter and are dismissed on the grounds of collateral
> estoppel or res judicata, as the source of Mr. Jarvis' claims are through Ralph Schlatter on
> those counts."

34

As set forth above, the district court in the present case erred by not considering the motions to dismiss as motions for summary judgment, in light of the fact that the district court considered matters outside the pleadings in reaching its conclusions. However, as also set forth above, this error does not require reversal because, when viewed as summary judgment motions, the motions nevertheless would have succeeded, since there is no dispute of material fact and the defendants were entitled to judgment as a matter of law. Generally speaking, "a trial court's decision on summary judgment satisfie[s] the final judgment on the merits requirement for purposes of claim preclusion when the parties were fully heard, the decision is made with a reasoned opinion, and the ruling is subject to appeal or, in fact, reviewed on appeal." *Grimmett v. S & W Auto Sales Co., Inc.*, 26 Kan. App. 2d 482, 488, 988 P.2d 755 (1999).

Moreover, as explained above, the district court should have granted summary judgment in Wood's favor on Counts II, III, and IV because Jarvis lacks standing to bring the claims therein. Jarvis lacks standing to bring a claim of breach of Wood's fiduciary duty to Ralph, just as he lacks standing to bring a claim to quiet title to the State Avenue property, which he argues is properly held by Bossaw. See *Kansas Bldg. Industry Workers Comp. Fund*, 302 Kan. at 679 (requiring a cognizable injury to the party that is caused by the challenged conduct in order in order to show standing to bring a claim). A finding that, as a matter of law, a party does not have standing to bring a claim generally is a judgment on the merits that leads to dismissal with prejudice, unless the circumstances of the case could change or the action could be amended to show standing. See *Goldblatt v. Unified Government of Wyandotte County/Kansas City*, No. 116,372, 2017 WL 2617151, at *1-4 (Kan. App. 2017) (unpublished opinion) (noting that standing implicates subject matter jurisdiction and affirming dismissal with prejudice for lack of standing); see also *Anderson v. Richard*, No. 112,027, 2015 WL 802759, at *1-4 (Kan. App. 2015) (unpublished opinion) (reversing dismissal with prejudice for lack of standing because the district court had erroneously determined that the plaintiff "could never have standing" to bring the suit).

35

Here, the district court rightly found, albeit not in so many words, that Jarvis lacked standing to bring the claims asserted against Wood in Counts II, III, and IV. Moreover, as a matter of law, the undisputed facts in the present case reveal that there is no way that Jarvis could have standing personally to pursue such claims. Therefore, although it is not exactly clear whether the district court intended to dismiss Count II with or without prejudice, Count II should have been dismissed with prejudice. Similarly, because Jarvis lacked standing to bring Counts III and IV, those counts should have been dismissed with prejudice. Thus, the district court erred to the extent that it dismissed Count II, Count III, and Count IV without prejudice, as those claims should have been dismissed against Wood with prejudice.

Affirmed in part, reversed in part, and remanded with directions to dismiss all claims against Wood with prejudice.